**Roy OLSON, Plaintiff,**

v.

**TRUSTEES OF the CALIFORNIA STATE UNIVERSITIES et al., Defendants.**

**No. 72-1861-AAH.**

United States District Court, C. D. California.

Dec. 4, 1972.

Mike Mayo, Montebello, Cal., for plaintiff.

Evelle J. Younger, Atty. Gen., Edward Belasco, Blanche C. Bersch, Deputy Attys. Gen., for defendants.

## DECISION AND ORDER DISMISSING COMPLAINT WITH PREJUDICE

HAUK, District Judge.

This is an action for damages and writ of mandate by a tenured associate physics professor at California State University, Northridge, (hereinafter referred to as "Northridge"), formerly known as San Fernando Valley State College. On August 14, 1972, Roy Olson filed a Complaint in this District requesting $50,256 in damages as well as a peremptory writ of mandate commanding the California State Universities System, its Trustees and Chancellor and the President of Northridge to provide him with "a fair and impartial hearing as protected by the 14th amendment to the United States Constitution on his qualifications for promotion to the rank of Professor of Physics."

On September 12, 1972, the Defendants filed a motion to dismiss, asserting, inter alia, that Mr. Olson had not claimed an interest that is constitution-

ally protected, and even if he had, its denial in this case was not arbitrary and capricious. A hearing was held by this Court on November 13, 1972. The motion to dismiss is based upon plaintiff's failure to state a claim upon which relief can be granted.[1] We agree with the defendants and grant their motion to dismiss with prejudice.

### FACTS

Roy Olson applied several times for a promotion to the tenured status of full Professor of Physics at Northridge, and on at least four separate occasions his requests were denied.

On November 2, 1970, Olson received the denial of his third request for a promotion from associate to full professorship. At this time he objected in the proper manner to the purported grounds of denial.

He made his fourth promotion application on October 1, 1971. At that time Olson also wrote a letter to Defendant Cleary, the President of Northridge, in which he requested consideration of his application by an "unbiased committee, whose members would be uninvolved in past denials of Plaintiff's applications, in order to circumvent past biases and prejudices and to objectively determine the fate of the requested promotion."

President Cleary denied this request in a letter to the Plaintiff.

Shortly thereafter, the President appointed to the department's promotional committee the same persons who had served in previous years. Mr. Olson asked to appear before the committee, was turned down and subsequently lost his fourth bid for a promotion. Two other associate professors did receive, at the committee's meeting on October 15, 1971, promotions to full professorships.

Olson further asserts that the committee adopted a set of rules for promotion which involve "no reasonable standard for promotion and are purely subjective, arbitrary, and capricious. Moreover, he claims, the two professors who received tenured full professorships "lacked the tenure, skills and teaching qualifications possessed by plaintiff."

Claiming that he has exhausted his administrative remedies, Mr. Olson now is bringing this case to our Federal Court which, because of the nature of the proceedings, assumes as a fact that Olson has actually exhausted all his administrative remedies.

### THE 14TH AMENDMENT AND DUE PROCESS

■ We note first that state action is present, since the California State Universities are public institutions financed by the legislature. Moreover, we also note that Olson has not alleged that the promotional committee's action was racially motivated or in any other way directed at his personal or ethnic background. All he points to is the denial of a hearing.

Olson has invoked the jurisdiction of this court pursuant to 42 U.S.C. § 1983 and 28 U.S.C.A. § 1343, statutes which are grounded in the Fourteenth Amendment.[2] References to that part

1. See F.R.Civ.P. 12(b)(6): the rule states that a motion to dismiss may be treated as a motion for summary judgment under Rule 56 of the FRCivP. Rule 56(c) says that in order for the court to grant summary judgment, it must find that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

2. Section 1 of the 14th Amendment:
Amendment XIV.—Citizenship; Privileges and Immunities; Due Process; Equal Protection; Apportionment of Representation; Disqualification of Officers; Public Debt; Enforcement Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

of the Federal Constitution appear frequently in his complaint, but where and how does he show a "deprivation of liberty or property"?

### Liberty

■ To claim that Olson's right to liberty has been violated by California State is to exaggerate dangerously the implications of his experience with the promotional committee. The Supreme Court, in Wisconsin v. Constantineau, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1970), observed that a denial of liberty would occur "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him." In that type of situation, "notice and an opportunity to be heard are essential." But the situation here does not jeopardize Mr. Olson's standing in the community.[3] That he has been denied a position more prestigious, more secure, and possibly more lucrative than what he already occupies, without more, does not mean that he has been deprived of a constitutionally protected interest. If it did, then any high school senior applying as a freshman and turned down without a hearing or statement of reasons by a state university would have a cause of action under the 14th amendment. The court does not wish to illustrate any more of the parade of horrors that certainly would be possible under such a decision.

■ Neither the rejection of Olson for promotion nor the rejection of a student by a college is tantamount to a "badge of infamy" attached by the state to the citizen. If it were, then the due process clause admittedly would come into play. *Constantineau* at 437, 91 S. Ct. 507. See also Wieman v. Updegraff, 344 U.S. 183, 191, 73 S.Ct. 215, 97 L.Ed. 216 (1952).

*Constantineau* was cited with approval in a more recent Supreme Court case, Board of Regents of State Colleges v. Roth, 408 U.S. 564 at 573, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). In that case an *untenured* professor was not rehired.

---

The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

(1) To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42;

(2) To recover damages from any person who fails to prevent or to aid in preventing any wrongs mentioned in section 1985 of Title 42 which he had knowledge were about to occur and power to prevent;

(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote. 28 U.S.C. § 1343

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. 42 U.S.C. § 1983

3. The police chief of Hartford, Wisconsin, pursuant to a state statute, posted a notice in all liquor outlets in that town that the sale or gifts of liquor to Constantineau, a resident of the city, were forbidden for a year. The statute provided for such posting without notice or hearing with respect to any person who by excessive drinking produced certain conditions or exhibited specific traits such as exposing himself or his family to want, or becoming dangerous to the peace of the community. Constantineau sued for a hearing *stating that such a hearing on* due process was necessary because he was being deprived of liberty under the 14th amendment. The Supreme Court found in his favor. Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1970)

The President of his university merely informed the professor that he would not be rehired for the upcoming academic year. "He gave [him] no reason for the decision and no opportunity to challenge it at any sort of hearing." Id. at 568, 92 S.Ct. at 2704. The Supreme Court upheld the university's action. The facts in the case before this Court are not nearly as severe. While Professor Roth was terminated without tenure, Professor Olson simply has not been promoted though he remains tenured. If honor is to be risked, or a badge of infamy affixed, it should undoubtedly occur in the former case where tenure was denied. Yet even there, the Supreme Court found no constitutional violation. As Justice Stewart said in *Roth*, "there is no suggestion whatever that the respondent's interest in his 'good name, reputation, honor, or integrity' is at stake." There is, therefore, here no deprivation of Olson's *liberty*. Let us turn to *property*.

### Property

■ Property under the Fourteenth Amendment has been an elusive concept. Now, at least in the areas of promotion and rehiring, the Supreme Court has framed a definition in the twin decisions of Board of Regents of State Colleges v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) and Perry v. Sindermann 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). To be constitutionally protected, the property interest must genuinely exist. A one-year teaching contract that must be renewed does not carry a reasonable expectation of re-employment. The property interest expires on the same day as the contract. See *Roth, supra*. However, when a person has taught for 10 years and there are unwritten, shared understandings between university and faculty that people will be rehired, then a property interest may exist, as it did in Perry v. Sindermann. In that case, the requirement that a person must be rehired was not only *pro forma* but actually an existing and understood rule, a form of quasi-contract.

"Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as a state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Roth* 408 U.S. at 577, 92 S.Ct. at 2709.

■ Clearly Mr. Olson's sought promotion does not approach the definition of property as described above. He was not fired, nor did his employers violate any tacit agreements or quasi contracts or mutual understandings. Nothing more occurred than a request for promotion, followed by a denial.

Plaintiffs cites Perry v. Sindermann, *supra*, for the claim that he has a constitutionally protected property interest. This argument reveals a misreading of the opinion. Sindermann had a professorial job, albeit untenured, that carried with it a reasonable expectation of continued employment. "In particular the respondent [Sindermann] alleged that the college had a de facto tenure program, and that he had tenure under that program." *Perry*, 408 U.S. at 600, 92 S. Ct. at 2699.

". . . [T]o determine whether due process requirements apply in the first place, we must not look to the 'weight' but to the 'nature' of the interest at stake." *Roth*, supra, 408 U.S. at 570, 571. 92 S.Ct. at 2705. The nature of the interest in *Perry* encompassed a set of rules and understandings, fostered by state officials, that could justify Sindermann's legitimate claim to continued employment "absent sufficient cause" to terminate. "A person's interest in a benefit," the Supreme Court explained, "is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing." Id. Also see

*Perry,* 408 U.S. at 601, 602, 603, 92 S.Ct. 2694, 2700.

No such tacit understanding exists in Olson's situation. He alleges no such understood arrangements or rules or quasi contract in his complaint. In fact the rules in effect make it clear [4] that in the California State Universities System the promotion does not devolve upon associate professors as a matter of course or of right. There must be affirmative action; the faculty promotion committee acts on recommendations from other faculty members, students and other sources.[5] Then it decides each case on the merits. The rules stress that "mere

---

4. Section 7.7 A
   Personnel Policies & Procedures of the General Faculty
   San Fernando Valley State College
   1971–1972 Academic Year
   7.7 PROMOTIONS
   A. *Eligibility*
   1. A faculty member in the rank of Associate Professor or Assistant Professor shall be considered for promotion during his fourth year in rank and every year thereafter until promotion is granted. Individuals appointed in February shall be considered as though they had been appointed in the following September. In the case of academic employees who first began their consecutive full-time service during an academic year commencing on or after September 1, 1971, only tenured faculty or those selected for the simultaneous award of tenure may be promoted to the ranks of associate professor or professor. (V 42702)
   2. A faculty member in the rank of Assistant or Instructor shall be considered for promotion each year after completing one year of service.
   3. A faculty member who is in his first, second or third year of service in the rank of Assistant Professor or above may be considered for promotion only upon special recommendation of his department chairman or dean or departmental personnel committee.
   4. A faculty member may, in writing, withdraw his name from consideration at any time by a letter to his department chairman. Such withdrawal for consideration shall not make him eligible to serve on a personnel committee.
   5. A faculty member on leave, who is a candidate for promotion shall be considered as carefully as if he were not on leave. He must insure that his school personnel file is up-to-date and should inform his department chairman of his current and projected activities which might have a bearing on his promotability.
   6. Special Promotion Pending Approaching Retirement
      A tenured member of the faculty may be considered for a special promotion if he meets the following specifications:
      a. Has served in his present rank for at least 8 years.
      b. Has reached the age of 62 years.
      c. Is recommended for such promotion by the personnel committee and dean of his school or, upon his appeal, by the Personnel Planning and Review Committee of the College.
      Such promotions are made a charge against the quotas in rank for the College as a whole rather than against those of the particular school.

5. Personnel Policies & Procedures of the General Faculty, *supra* note 4.
   B. *Criteria*
   1. General Considerations
      a. Recommendations on faculty promotions shall be the result of professional and personal judgments based on all available relevant data. Those making recommendations should consider information from other faculty members and any other source, including, but not limited to students. (V 42701)
      b. While excellence is encouraged in all categories of criteria, the strength and quality of contributions will not exhibit the same profile for all candidates under consideration.
      c. No faculty member shall be approved for tenure who has not demonstrated that he is potentially promotable. In all instances, however, it is the quality or merit of actual contributions which shall be evaluated. "Mere

time in rank shall not be considered of value for promotional purposes." [6] If Olson feels that he holds a property interest in a promotion because such a governmental benefit occurs as a matter of right, the rules in effect explicitly defeat his notion.

■ *Roth* clearly states that "the Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits." (At p. 576 of 408 U.S., at 2708 of 92 S.Ct.) Moreover, those interests and benefits can assume many forms. The flaw in Mr. Olson's case, however, is that he has not yet obtained any interest. The words "already acquired" are controlling in Justice Stewart's passage above. If an individual does not possess, or enjoy imminent access to such an interest, i. e., something tangible, he cannot use the Federal courts to bolster his chances, or meet his hopes, or answer his prayers. In the case at bar, precisely what has Mr. Olson acquired? A reasonable expectation? We know from the Personnel policies and procedures of his university that he has not. A contractual guarantee? The record tells us no. A mutual explicit understanding, a quasi contract? We look for such supports in vain. The plaintiff simply has been denied a laurel to which he has no constitutional guarantee.

"Certain attributes of 'property' interests protected by procedural due process emerge from previous [Supreme Court] decisions. To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim to entitlement." [7]

At the hearing on November 13, 1972, the Court noted the deficiencies of the complaint to Plaintiff's counsel and warned him that the facts alleged did not fall within the parameters of Perry v. Sindermann, supra. The Court pointed out that Plaintiff had submitted no affidavits or exhibits claiming that he reasonably expected a promotion or that he had been promised one. Actually, the Plaintiff has asserted nothing more than the theory that an occupational promotion is a constitutionally protected right to which the due process safeguards apply. The Court, disagreeing with this, offered to dismiss without prejudice in order to allow Mr. Olson to amend his complaint. The Plaintiff, however, refused this offer, his counsel stating in open court that he wanted to appeal upon the complaint as it stood and he had no other or further facts to add to those alleged in the complaint.

Therefore, and since the Court can come to no other conclusion than that there is no genuine issue as to any mate-

---

time in rank shall not be considered of value for promotional purposes." (SCAM 7360.50)

6. See Footnote 5, last sentence.

7. Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).
Property interest may assume many forms. The Supreme Court has held that a person receiving welfare benefits under statutory and administrative standards defining eligibility for them has an interest in continued receipts of those benefits, and that interest is safeguarded by procedural due process. Goldberg v. Kelley, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Flemming v. Nestor, 363 U.S. 603, 611, 80 S.Ct. 1367,

4 L.Ed.2d 1435 (1960). Closer to the case at bar, a public college professor dismissed from a tenured office and a professor dismissed during the term of his contract have interests in continued employment that are safeguarded by due process. Slochower v. Board of Education, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956); Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952). Moreover, a teacher recently hired without tenure but with a clearly implied promise of continued employment is protected, Connell v. Higgenbotham, 403 U.S. 207, 208, 91 S.Ct. 1772, 29 L.Ed.2d 418 (1970). None of these decisions cover the circumstances described by Professor Olson: a promotion he desires but to which he can demonstrate no promise or right.

rial fact, the Defendants' motion to dismiss with prejudice is granted in accordance with the foregoing which shall also constitute findings of fact and conclusions of law, in accordance with Rule 56 F.R.Civ.P., in addition to the formal Findings of Fact and Conclusions of Law which the Court now orders signed and filed.