Jeanne G. PERKINS, Plaintiff,

v.

The REGENTS OF the UNIVERSITY OF CALIFORNIA, a public corporation, et al., Defendants.

No. 72–2145–AAH.

United States District Court,
C. D. California.

Jan. 19, 1973.

Bradley Tabach-Bank, Geffner & Satzman, Los Angeles, Cal., for plaintiff.

Thomas J. Cunningham, Donald L. Reidhaar and Aletha R. Titmus, University of California, Berkeley, Cal., for defendants.

## OPINION AND ORDER DISMISSING COMPLAINT WITHOUT PREJUDICE

HAUK, District Judge.

This case came on as a motion by the Defendants to dismiss Mrs. Perkins' complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted. A hearing occurred on January 14, 1973. At this time the Court grants the Defendants' motion to dismiss, but without prejudice.

We have here another in the mounting number of employment cases that are being filed in the Federal Courts. Seven years ago Mrs. Jeanne Perkins was hired to teach in the UCLA French Department for the 1965–1966 academic year. Since then she has been continuously employed and has attained the rank of untenured Assistant Professor. In accordance with the University of California's general practice, tenure decisions are made after a person has taught six years. Thus in October 1970, the Executive Committee of the French Department considered Mrs. Perkins'

qualifications and voted to recommend that she be advanced to Associate Professor, a tenured position. The Committee designated the French Department's acting chairman, Marc Bensimon, to forward this recommendation to the Dean of UCLA's Department of Letters and Sciences.

On February 8, 1971, Mrs. Perkins heard from David S. Saxon, who is both Vice Chancellor and the delegate of the Chief Campus Officer at UCLA. His letter told the Plaintiff that "it has been decided to limit your reappointment as Assistant Professor at the University of California to a one-year term, ending on June 30, 1972."

"This action is taken," Saxon continued, "in conformity with policy which permits appointments and renewal of appointments of Assistant Professors for a one-year term when explicit notification is given by the Administration and when such action is mutually acceptable to the individual and the department." [1]

Ten days later the French Department's Executive Committee sent a resolution to the administration at UCLA asking them to set aside their decision and review Perkins' case anew. This request was disapproved in a memorandum from Saxon to Bensimon, sent May 3, 1971. At this point Mrs. Perkins decided to ask the American Federation of Teachers [2] to represent her in connection with UCLA's decision not to promote her or reappoint her. The Local's President, Lora Weinroth, wrote to the new Chairman of the French Department, James Lawler, demanding to see all· the documents concerning UCLA's treatment of Perkins. The letter was mailed February 16. Twelve days later Saxon wrote Weinroth stating that he had received the letter (apparently Lawler forwarded it to him) and that Ms. Weinroth could not see the files "because of the traditional confidential character of academic review procedure." He went on to say that "Recognizing that the confidential nature of such proceedings might act or appear to act as a barrier to investigation in cases of appeal, the Academic Senate has established procedures which provide for independent review of dossiers in such circumstances. Accordingly, I shall write Professor Perkins advising her of the established appeal mechanism through which she may seek relief from any harm she may believe has resulted from an improper· administrative action taken in her case."

Next, Weinroth wrote to Saxon (on April 22, 1971) asking for the grounds on which the Plaintiff had been denied tenure. Saxon never answered. On the same day, Weinroth wrote to Professor Thomas Hicks, Chairman of the Faculty Committee on Privilege and Tenure at UCLA, asking for a hearing regarding the grounds. This document produced results: Perkins and Weinroth were permitted to and did appear before the Committee on Privilege and Tenure on May 18, and accused Marc Bensimon of prejudicial conduct against Perkins. The Committee refused to show the Plaintiff her records, but they promised to investigate the files for the sole purpose of determining whether prejudicial conduct had indeed occurred. Within a month, Mr. Hicks informed the Plaintiff that the Committee had not found any prejudicial material. Since then Mrs. Perkins has been trying to get a more "open" hearing, and her efforts have been fruitless.

Upon these facts Mrs. Perkins brought suit here in Federal Court asking for wage losses, a writ of mandate

---

1. The letter went on to say the following: "If you should elect not to accept this one-year term appointment, it will be necessary for your appointment to end effective June 30, 1971. Unless I hear to the contrary from you, I shall assume that you will accept reappointment under these modified terms."

We assume that Mrs. Perkins accepted these terms, since no material to the contrary appears in the record and she worked that year.

2. The chapter representing Perkins was Local 1990, American Federation of Teachers, AFL-CIO.

directing the Defendants to inform her of the reasons for her dismissal and also to hold an "open" hearing, and a preliminary injunction enjoining the Defendants from terminating Plaintiff's appointment with the University of California at Los Angeles pending the final hearing and outcome of this action.

She also claims that the University of California has deprived her of property and liberty within the meaning of the Fifth and Fourteenth Amendments to the United States Constitution.[3] We should say preliminarily that the record does not disclose many of the essential factual elements which must exist before the Court can determine that these interests have been curtailed. The crucial points stand unsupported by affidavits.[4] Fairness dictates that we dismiss without prejudice, allowing the Plaintiff to file a new complaint alleging whatever additional facts she has supported by affidavits. For at this time, proceeding on the information available to the Court, we have no choice but to conclude that the University of California has not tampered with any of Mrs. Perkins' constitutional rights.

## PROPERTY

◼ The Court fails to see how Mrs. Perkins can allege or prove a denial of "property" with the facts she has alleged. Her initial term was for one year. The University kept renewing her contract in one-year increments, but the Court finds no evidence that these renewals were tantamount to *de facto* tenure, or even a quasi-contractual guarantee of permanent employment. The Court is quite aware of recent Supreme Court language stating that "property" denotes a broad range of interests that are secured by "existing rules or understandings."[5] But the Supreme Court went on to say in Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L. Ed.2d 570 (1972), that "a person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing." *Id.*, at 601, 92 S. Ct., at 2699. Nothing in the record shows that Perkins' expectation of permanent employment was anything more

3. AMENDMENT V—CAPITAL CRIMES; DOUBLE JEOPARDY; SELF – INCRIMINATION; DUE PROCESS; JUST COMPENSATION FOR PROPERTY
   No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.
   AMENDMENT XIV—CITIZENSHIP; PRIVILEGES AND IMMUNITIES; DUE PROCESS; EQUAL PROTECTION; APPORTIONMENT OF REPRESENTATION; DISQUALIFICATION OF OFFICERS; PUBLIC DEBT; ENFORCEMENT
   Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

4. Rule 12(b)(6) states that a motion to dismiss pursuant to Rule 12(b)(6) should be treated as a motion for summary judgment under Rule 56, F.R.Civ.P. This means, inter alia, that the parties must have had the opportunity to submit affidavits, which the Plaintiff has not done here. In fact the Plaintiff has not even submitted a copy of the University rules regarding promotion and tenure. The Court finds this omission decisive, given Mrs. Perkins' assertion that UCLA did not follow its own regulations.

5. Perry v. Sindermann, 408 U.S. 593, at 601, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); Board of Regents of State Colleges v. Roth, 408 U.S. 564, at 571, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

than a unilateral revery. She only asserts it, and the Supreme Court intimated in Perry v. Sindermann that the basis for such constitutional litigation must be firmer than words.[6]

■ This Court already has held, in Olson v. Trustees of California State College, 351 F.Supp. 430 (C.D.Cal.1972), that "To be constitutionally protected, the property interest must genuinely exist. A one-year teaching contract that must be renewed does not carry a reasonable expectation of re-employment. The property interest expires on the same day as the contract." To determine whether due process requirements apply, we must not look to the weight, but to the nature of the interest at stake.[7] The nature of the interest in Perry v. Sindermann encompassed a set of rules and understandings, fostered by state officials, that could justify Sindermann's legitimate claim to continued employment. No such rules or tacit understandings existed in *Olson*. Although such understandings may exist in the case at bar, they are merely alleged and not supported by facts. Even if the facts are set forth by affidavit, it should be noted that the task of proving that a property interest arises out of such facts is a heavy one.

## LIBERTY

Mrs. Perkins' entire argument regarding "liberty" rests on one sentence in her complaint: "Plaintiff has sought employment elsewhere but has been unable to obtain an appointment for the next 1972–1973 academic year."[8] Her two arguments are that the University of California has attached a hopeless stigma to Mrs. Perkins by relieving her after seven years and that the *Roth* decision left open the question whether a termination's adverse effect on career opportunities constitutes a state-imposed restriction on "liberty."

■ The Court notes preliminarily that an unpleasant experience with promotion or tenure committees does not automatically justify a claim of deprivation of liberty. More is required. The Supreme Court has observed that a denial of liberty occurs "[w]here a person's good name, reputation, honor or integrity is at stake because of what the government is doing to him." Wisconsin v. Constantineau, 400 U.S. 433, 437, 91 S. Ct. 507, 510, 27 L.Ed.2d 515 (1970). Something tantamount to a "badge of infamy" must be pinned upon the complainant. Prima facie, failure to renew a one-year contract is hardly that.

■ Plaintiff alleges that she has been unable to find work elsewhere, yet we have no affidavits showing how extensively she has looked. Did she apply only to USC, or did she blanket the State of California with her résumés? More important, her attorney stated at the hearing on January 15, 1973, that a termination after seven years with the U.C. system virtually precludes a professor from similar employment at other institutions of higher learning. If this is in fact the understanding, known generally among administrators and professors of all ranks, then Mrs. Perkins may have a proper cause of action. But the Court needs information to that effect by way of affidavits.

Her second argument involving the *Roth* decision, however, must fail. Plaintiff cites a recent District Court decision in Illinois[9] where the court vacated a motion for summary judgment which previously had been granted to

---

6. "The Court of Appeals suggested that the respondent might have a due process right to some kind of hearing simply if he *asserts* to college officials that their decision was based on his constitutionally protected conduct 430 F.2d [939], at 944. We have rejected this approach in Board of Regents v. Roth, 408 U.S. 564, at 575, n. 14, 92 S.Ct., at 2708." Perry v. Sinder-

mann, supra, 408 U.S., at 599, n. 5, 92 S.Ct., at 2698.

7. Board of Regents v. Roth, *supra*, 408 U.S. at 571, 92 S.Ct. 2701.

8. Complaint, page 10.

9. Franz v. Board of Education of Riverside School District No. 96, No. 72 C151, D.C.N.D. Illinois August 10, 1972.

the defendant. In reversing itself, the Court stated that the Franz case ". . . presented genuine issues of material fact—the degree to which plaintiffs' career opportunities have been foreclosed and the extent to which this has been caused by their termination." In analyzing *Roth* the Illinois District Court addressed itself to the issue of whether the termination foreclosed the teachers' freedom to take advantage of other employment opportunities. The unresolved issue is, according to the Illinois court, "Does a substantial adverse affect (sic) upon career opportunities which has proven to have been caused by termination of employment constitute a state-imposed restriction upon liberty which required a hearing under the due process clause?" Id., at 2.

This Court fails to see how *Roth* ignored this question, for the Supreme Court discussed the concept of "liberty" at some length and delineated the parameters within which the interest might exist in an employment case. Although it is true that there may be instances in which a state refuses to rehire a person under such circumstances as would jeopardize his liberty, the *Perkins* case, at least on the facts available to the Court, is not such a situation. *Roth's* language dovetails precisely: '

"The State, in declining to rehire the respondent, did not make any charge against him that might seriously damage his standing and associations in his community. It did not base the nonrenewal of his contract on a charge, for example, that he had been guilty of dishonesty, or immorality. Had it done so, this would be a different case. For '[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.' [Citing Wisconsin v. Constantineau, *supra*, and other cases.] In such a case, due process would accord an opportunity to refute the charge before University officials. In the present case, however, there is no suggestion whatever that the respondent's interest in his 'good name, reputation, honor or integrity' is at stake.

"Similarly, there is no suggestion that the State, in declining to re-employ the respondent, imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities. The State, for example, did not invoke any regulations to bar the respondent from all other public employment in State universities. Had it done so, this, again, would be a different case. For '[t]o be deprived not only of present government employment but of future opportunity for it certainly is no small injury . . .'. Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. at 185, 71 S.Ct. 624, 95 L.Ed. 817 (Jackson, J., concurring). See Truax v. Raich, 239 U.S. 33, 41, 36 S.Ct. 7, 10, 60 L.Ed. 131." *Roth*, supra, at 573–574 of 408 U.S. at 2707 of 92 S.Ct.[10]

The Illinois Court and the Plaintiff seem to intimate something bordering on an affirmative obligation on the part of UCLA. While it is true that the University cannot foreclose a range of opportunities in a manner that denies the right to due process, Schware v. Board of Bar Examiners, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1958), this does not mean that it or the Regents have a positive duty to determine whether the job market can absorb Mrs. Per-

---

10. Saxon's letter to Perkins, Plaintiff's Exhibit "A", hardly used defamatory language. The strongest language it contained is as follows: "You will be pleased to know that your salary rate for the remaining year of service at UCLA will reflect an increase to Step IV under the terms of a provision of policy which permits advancement for a terminal year in recognition of conscientious and effective service despite *a negative assessment of the individual's eventual qualification for advancement to tenure.*" [emphasis added]

kins. The borderland of liberty does not stretch that far. Even the Declaration of Independence guarantees only "the pursuit of happiness," not the millenium itself. As long as the opportunity to pursue new employment persists, the Court must conclude that the University of California has not abridged Mrs. Perkins' liberty. We reach this decision regardless of the decision of the District Court in Illinois.

Ordinarily in a situation like this, it would be proper to dismiss Mrs. Perkins' complaint with prejudice. However, her counsel has represented to the court that additional factual material may be obtainable. Once these additional facts are available and Mrs. Perkins feels that they are strong enough to withstand a motion to dismiss or a motion for summary judgment, she should replead her case and then oppose any motion to dismiss or for summary judgment by way of affidavits showing the essential facts which must appear to support any claim of deprivation of liberty or property. Accordingly, Defendants' motion to dismiss is hereby granted in accordance with Rule 12, F.R.Civ. P., without prejudice.