**Freda C. DUCORBIER**

v.

**BOARD OF SUPERVISORS OF LOUISI-
ANA STATE UNIVERSITY et al.**

Civ. A. No. 73–1770.

United States District Court,
E. D. Louisiana.

Nov. 19, 1974.

Roger I. Dallam, Greenberg, Cohen & Dallam, Gretna, La., for plaintiff.

Rutledge C. Clement Jr., Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., for defendants.

BOYLE, District Judge:

The motions of defendants to dismiss and alternatively for summary judgment were heard on a prior date. Having taken time to consider, the Court is now ready to rule.

Plaintiff sues under the Civil Rights Act, 42 U.S.C. 1983, alleging she was wrongfully discharged from her position as instructor at the University of New Orleans, formerly Louisiana State University in New Orleans (hereinafter UNO).

Plaintiff, a white female, was first employed as an associate in the Department of Sciences at UNO for one semester from September, 1964, to January, 1965. At that time, she left UNO to complete work on her master's degree. She received her master's degree in mathematics from the University of Arkansas in June, 1965.

Plaintiff then returned to UNO and was appointed an instructor of mathematics from September, 1965, to May, 1966. She was offered, and accepted, three successive appointments covering the periods September, 1966–May, 1967;

September, 1967–May, 1968; and September, 1968–May, 1969. Plaintiff had completed only the first semester of teaching under her appointment for the 1968–1969 academic year when she resigned for maternity reasons.

Plaintiff returned to UNO in September, 1969, and served as instructor of mathematics for two successive academic year appointments: September, 1969–May, 1970 and September, 1970–May, 1971. In February, 1971, she was notified that she would be reappointed for the academic year 1971–1972, and this would be her final appointment at UNO. The period of notification was well within that recommended in the University Regulations (Document No. 17, Exhibit D–25) and by the American Association of University Professors (Document No. 22, p. 65). Plaintiff taught from September, 1971, to May, 1972, and she was not appointed for the following year.

In May, 1972, plaintiff availed herself of the UNO grievance procedure by requesting that her case be reviewed by a grievance committee consisting of five faculty members. At the request of this committee, Dr. Joe R. Foote, Chairman of the Department of Mathematics, submitted the following summary of reasons why plaintiff was not reappointed.

"(a) Retention was and is against the will of the permanent faculty;

(b) No outstanding merit was observed since the date of her master's degree; no enrollment for advanced courses here or elsewhere; no development of a special area of mathematics; no research; no systematic seminar participation; no colloquium lecture; no summer institutes; etc.;

(c) Does not possess the terminal degree required for advanced ranks, greater responsibilities, and indefinite tenure;

(d) Does not fit into long range plans for an advanced degree-granting Department in a major university.

(e) Was near the point of length of service at which the AAUP recommends final determination of tenure."

Record, Document No. 17, Exhibit D–39.

After its investigation, the grievance committee concluded that plaintiff had not been unfairly treated and there was no basis for her grievance.

At all times after September, 1965, plaintiff's position at UNO was that of instructor. According to the University By-Laws,[1] the University Regulations,[2] and the Faculty Handbook,[3] persons with the rank of instructor are on annual appointment and are not eligible for indefinite tenure.

Plaintiff does not allege that the nonrenewal of her appointment was the result of racial or sex discrimination or because she exercised her right of freedom of speech or freedom of association.

Since both parties have relied on affidavits and other matters outside the pleading, the motion to dismiss for failure to state a claim shall be treated as one for summary judgment under Rule 56. See Rule 12(b), F.R.Civ.P.

Defendants allege there is no genuine issue of material fact and they are entitled to judgment as a matter of law. Plaintiff alleges that several material questions of fact remain in controversy and summary judgment is therefore inappropriate.

Plaintiff disputes defendants' allegation that neither UNO nor the LSU System has adopted the guidelines promulgated by the American Association of University Professors (AAUP). These guidelines provide that after a faculty member has been employed at the level of instructor or above for more than

---

1. See Record, Document No. 17, Exhibit D–24.

2. See Record, Document No. 17, Exhibit D–25.

3. See Record, Document No. 17, Exhibit D–26, page 17.

seven years, that person cannot be discharged without a showing of good cause at a hearing.[4]

Whether or not UNO adopted the AAUP guidelines is irrelevant because plaintiff doesn't claim that she has been employed at the level of instructor for more than seven years. Even if she could conclusively prove at a trial that the guidelines had been adopted, she could not be considered to have acquired tenure under them.

Plaintiff also contests defendants' statement that, " . . . According to Mrs. Ducorbier, no one other than Dr. Kenelly ever gave her the impression that her job as a mathematics instructor was indefinite."[5] Plaintiff's own testimony demonstrates there is no genuine issue as to this fact.[6]

Plaintiff also claims there is a factual dispute as to whether UNO's nonretention of her has attached a stigma to her good name, reputation, honor and integrity and also as to whether she had an objective expectancy of indefinite employment as long as her performance was satisfactory.

We think there is no actual controversy as to the facts here. The controversy concerns what conclusions should be drawn from the undisputed facts.

The due process requirements of notice and hearing[7] apply only to the interests in liberty and property which are protected by the Fourteenth Amendment. Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

Plaintiff seeks to convince the Court that the nonrenewal of her appointment has affected her good name, reputation and honor, because it has been held that in such a case, there is a possible deprivation of liberty which requires notice and hearing. See Board of Regents v. Roth, supra, 408 U.S. at 574, 92 S.Ct. at 2707 and cases cited therein.

Plaintiff has submitted no evidence to substantiate her claim that she suffered a loss of her good name, reputation and honor. At the present time she is not employed, but it has not been shown that her inability to locate employment resulted from UNO's failure to reappoint her. In fact, plaintiff has been employed by another university in New Orleans on a temporary basis since leaving UNO.

Plaintiff testified as to several reasons for not hiring her which were given her by prospective employers, such as lack of work or her lack of state certification to teach certain subjects. Plain-

4. See Record, Document No. 22, pp. 59, 65.

5. Defendants' Statement of Material Facts # 17.

6. "Q. Before we go into Dr. Kenelly, is there any other person who had the power to reappoint you who told you that you had an indefinite job?
A. No.
Q. So this would concern only Dr. Kenelly?
A. He's the only one who ever made a statement to that effect."
Record, Document No. 17, pp. 80, 81.

7. It should be noted that plaintiff is seeking reinstatement, not a hearing. She in fact was granted a hearing under the UNO grievance procedure. The details of the hearing are not in evidence here but Judge Cassibry made the following findings about the UNO grievance procedure in Welch v. Hitt, No. 72–2739, E.D.La., July 30, 1974:
"Faculative witnesses testified in camera; Welch was neither present, nor did he possess the right to examine the witnesses."
(Finding # 14).
"The University's Grievance Procedure, while having an undeniably salutory effect within the University's community, fails to conform with rudimentary due process. However, since Welch was not discharged for cause, he is not entitled to a hearing." (Conclusion # 8).
Plaintiff has not alleged that UNO's failure to renew her contract was in retaliation for her exercise of rights guaranteed by the Constitution. Therefore, if it were determined that plaintiff should recover in this case, this Court could merely order a hearing, and not reinstatement of plaintiff in her former employment. Bradford v. Tarrant County Junior College, 492 F.2d 133, 135 (5 Cir. 1974).

tiff did not allege that any employer mentioned her departure from UNO as a reason for not hiring her.

Plainiff admits that when she was initially employed by UNO, persons qualified to teach mathematics on the college level were in great demand. When plaintiff was released, there was an oversupply of such persons when compared with the demand for their services.[8] Plaintiff's inability to find employment may well be attributable to a change in the job market and not UNO's failure to reappoint her. Also, plaintiff testified in her deposition that she has applied for employment to only one college since she was released. (Record, Document No. 17, pp. 69–78). UNO was under no duty to determine whether the job market could absorb Mrs. Ducorbier before releasing her. See Perkins v. Regents of University of California, 353 F.Supp. 618, 623–624 (C.D.Cal.1973).

In addition, since most of the reasons given for UNO's action would be apparent from a review of plaintiff's resume (i. e., no Ph.D., no advanced courses, no research), it is difficult to determine how such action has affected her good name and reputation.

No charges have been made that plaintiff was not a good teacher and she has in fact received several recommendations from persons connected with UNO. Nor has she been charged with dishonesty, immorality or any other vice which could preclude her employment as an instructor of mathematics in the future.

■ The nonrenewal of employment of a nontenured teacher in order to implement a reduction in size of the faculty does not require notice and hearing because such nonrenewal does not stigmatize or label the teacher in a degrading way. ˙Collins v. Wolfson, 498 F.2d 1100 (5 Cir. 1974). Nor can we say as a matter of law that the nonrenewal here of plaintiff's employment, in order to reserve instructors' positions for persons working on their doctorate degree, has resulted in such stigma that her liberty interests have been infringed.

Judge Cassibry reached a similar conclusion in Welch v. Hitt, supra, a case involving another UNO faculty member.

See also Bradford v. Tarrant County Junior College, supra; and Perkins v. Regents of University of California, supra 353 F.Supp. at 622–624. Compare Francis v. Ota, 356 F.Supp. 1029 (D.Hawaii 1973).

Plaintiff also seeks to establish that she had an objective, reasonable expectation of continued employment as long as her teaching was satisfactory.

We find there is no true issue as to the facts. Plaintiff has testified as to the facts and there is no doubt that she had an expectancy of continued employment. The issue is whether that expectancy was reasonable under all the circumstances.

The Faculty Handbook clearly states the policy of the University that appointments of instructors were on an annual basis. Plaintiff acknowledges that she was given a copy of the Faculty Handbook when she was first employed by UNO in 1964.[9]

In addition, plaintiff acknowledges that she understood her employment at UNO from September, 1965 to January, 1969, was on a year-to-year basis.[10]

However, plaintiff alleges that when she returned to UNO in September, 1969, after an absence of one semester, her understanding of the term of her employment was claimed to be different. She testified in her deposition:

Q. Was there anything in writing concerning this understanding you say you had in 1969?

A. This was strictly verbal between instructors and the department chairman.

Q. There was only one department chairman, though?

---

8. See Record, Document No. 22, pp. 15–19.

9. See Record, Document No. 17, pp. 44–46.

10. See Record, Document No. 17, pp. 12, 13, 15, 16, 18.

A. Dr. Kenelly we're speaking of.

Q. What did he ever tell you?

A. He told me that he was impressed with the work that I was doing and that he thought I was a good instructor.

Q. Did he ever tell you that you had a job for as long as you wanted it, indefinite?

A. He indicated I didn't have to worry about any kind of problem with employment.

\* \* \* \* \* \*

(Record, Document No. 17, page 22)

Q. Now, going to Exhibit D–10, which purports to be a letter dated May 15, 1969, to Mrs. Ducorbier from chairman Kenelly, would you please read the first paragraph of that letter?

A. "I am pleased to offer you a position as instructor in mathematics at Louisiana State University in New Orleans effective September 11, 1969 through May 30, 1970 at a salary of $7,000 for the academic year".

Q. I'd like to ask you a question about this Exhibit D–10. When you received this letter how long did you think your job would extend?

A. Indefinitely.

\* \* \* \* \* \*

(Record, Document No. 17, page 29)

Q. Notwithstanding this first paragraph which says—

A. That's right.

Q. —"effective September 11, '69 through May 30, '70"?

A. That's right.

\* \* \* \* \* \*

(Record, Document No. 17, page 30)

Q. Let's go on to Exhibit D–11 dated May 22, 1969 from Mrs. Ducorbier to Dr. Kenelly. Would you please read the text of this letter, which is D–11?

A. "I am pleased to accept your offer of a position as instructor in mathematics at Louisiana State University in New Orleans, effective September 11, 1969 through May 30, 1970, at a salary of $7,000 for the academic year. I am enclosing the completed forms which you requested".

Q. And I'd like to ask you just one question on this letter. You stated in here the dates September 11, '69. through May 30, 1970, which are the same dates that were stated by Dr. Kenelly to you in D–10. Isn't it a little unusual if you thought you had an indefinite job, that you would have confirmed that you would take the job for this nine month period?

A. No, I was very happy to take the job for that nine month period, so I accepted it.

\* \* \* \* \* \*

Q. And notwithstanding the fact that right in this letter you stated your understanding that it was a nine month period, or September '69 through May '70, you nevertheless felt like you had indefinite tenure?

A. Yes. Now, I never said the word tenure because tenure didn't apply to instructors. That's a word we never used.

Q. But you nevertheless thought that you had—

A. My employment was secure.

Q. Would be there as long as you wanted it?

A. Right.

(Record, Document No. 17, pp. 31–32)

Q. And D–15, had you ever seen that document, or do you know what that is?

A. I have seen documents like this. I imagine I probably saw this one.

Q. And this has your name at the top and it says "Reappointment and change in salary beginning September, '70, continuing through", and it's blank. But down at the bottom it has tenure one year; is that correct?

A. Yes.

(Record, Document No. 17, page 34)

Q. Thank you. Let me go on to Exhibit D–17. I think you'll agree with me it's a reappointment recommendation dated February 5, 1970 reappointing you for the '70–'71 academic year. Is that correct?

A. Yes. . . .

(Record, Document No. 17, page 35)

Q. Going to Exhibit D–18, I think it's a reappointment recommendation dated September, '71, covering the academic year 1971 through 1972. Is that correct?

A. Yes.

Q. Now, from that, you received D–18 for your reappointment for '71–'72. Did you receive D–19 dated—

A. Yes, I did.

Q. —the same date, February 4, 1971?

A. Yes.

Q. And would you please read the text?

A. "This is your formal notification that this reappointment is your terminal extension".

Q. Signed by whom?

A. J. R. Foote.

Q. And he was the chairman of the department at this time?

A. Yes.

Q. Let me ask you one question about this notification of nonrenewal. This was in February of '71, but you had just received reappointment for '71–'72. So this means that '71–'72 would be your final year?

A. Yes.

(Record, Document No. 17, pp. 36–37)

Q. We can go on to Exhibit D–23, which is entitled resignation, or leave of absence. And I think you will agree that it says, "I recommend termination of Freda C. Ducorbier, effective May 24, 1972", and it's signed by Dr. Foote May 23rd, '72. That's all that purports to be, I believe.

A. (Witness nods head affirmatively).

(Record, Document No. 17, pp. 38–39)

Plaintiff bases her claim to "secure employment" solely on alleged information she received from Dr. John Kenelly.[11] Dr. Kenelly was employed by UNO as chairman of the Department of Mathematics during the 1968–1969 academic year. He left UNO in May, 1970, to become head of the Department of Mathematical Sciences at Clemson University. Kenelly stated in his affidavit:

"During his one year as chairman of the Department of Mathematics at LSUNO [UNO], neither affiant nor anyone else had authority to expressly or impliedly extend indefinite tenure to a member of the permanent faculty holding the rank of instructor. In addition, affiant never expressly or impliedly, directly or indirectly, guaranteed or assured Mrs. Ducorbier or any other instructor indefinite tenure."

 The records and affidavits clearly establish that if plaintiff was under the impression that she had tenure in view of the year-to-year renewals of her contract in writing, the explicit provisions on tenure in the University By-Laws, University Regulations and Faculty Handbook, then her impression was not reasonable.

 The Supreme Court has held, "To have a property interest in a benefit, a person clearly must have more

11. See Record, Document No. 17, page 81.

than a abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Board of Regents v. Roth, supra, 408 U.S. at 577, 92 S.Ct. at 2709. This is because property rights are created not by the Constitution but by the parties themselves. The evidence establishes no express contract guaranteeing her reemployment. In addition, she has not shown an implied contract since the facts establish that her expectation of guaranteed reemployment was subjective, unilateral and unreasonable. She has shown nothing more than a mere expectancy of employment. See Bradford v. Tarrant County Junior College, supra.

We believe the Supreme Court's conclusion in Board of Regents v. Roth is directly applicable here:

"Thus, the terms of the respondent's appointment secured absolutely no interest in re-employment for the next year. They supported absolutely no possible claim of entitlement to re-employment. Nor, significantly, was there any state statute or University rule or policy that secured his interest in re-employment or that created any legitimate claim to it. In these circumstances, the respondent surely had an abstract concern in being rehired, but he did not have a property interest sufficient to require the University authorities to give him a hearing when they declined to renew his contract of employment." (Footnote omitted).

█ Plaintiff here had a unilateral expectancy of continued employment which could not form the basis of a property interest. *See* Welch v. Hitt, supra. *See also* Jeffries v. Turkey Run Consolidated School District, 492 F.2d 1 (7 Cir. 1974); Berry v. Hamblin, 356 F.Supp. 306 (M.D.Pa.1973); Perkins v. Regents of University of California, supra 353 F.Supp. at 621.

Accordingly, the motion of defendants for summary judgment should be, and the same is hereby, granted.