John DOE et al., Plaintiffs,

v.

**COMMONWEALTH'S ATTORNEY FOR CITY OF RICHMOND et al., Defendants.**

**Civ. A. No. 74–0025–R.**

United States District Court, E. D. Virginia.

Oct. 24, 1975.

**1200**

John D. Grad, Alexandria, Va. (Philip J. Hirschkop), Alexandria, Va., for plaintiffs.

. Robert E. Shepherd, Jr., Asst. Atty. Gen. (Andrew P. Miller, Atty. Gen.), Richmond, Va., for defendants.

Before BRYAN, Senior Circuit Judge, LEWIS, Senior District Judge, and MERHIGE, District Judge.

BRYAN, Senior Circuit Judge:

■■ Virginia's statute making sodomy a crime is unconstitutional, each of the male plaintiffs aver, when it is applied to his active and regular homosexual relations with another *adult male, consensually* and *in private*.[1] They assert that local State officers threaten them with prosecution for violation of this law, that such enforcement would deny them their Fifth and Fourteenth Amendments' assurance of due process, the First Amendment's protection of their rights of freedom of expression, the First and Ninth Amendments' guarantee of privacy, and the Eighth Amendment's forbiddance of cruel and unusual punishments. A declaration of the statute's invalidity in the circumstances is prayed as well as .an injunction against its enforcement. Defendants are State prosecuting officials and they take issue with the plaintiffs' conclusions. With no conflict of fact present, the validity of this enactment becomes a question of law.

So far as relevant, the Code of Virginia, 1950, as amended, provides:

"§ 18.1–212. Crimes against nature.—If any person shall carnally know in any manner any brute animal, or carnally know any male or female person by the anus or by or with the mouth, or voluntarily submit to such carnal knowledge, he or she shall be guilty of a felony and shall be confined in the penitentiary not less than one year nor more than three years."

■ Our decision is that on its face and in the circumstances here it is not unconstitutional. No judgment is made upon the wisdom or policy of the statute. It is simply that we cannot say that the statute offends the Bill of Rights or any other of the Amendments and the wisdom or policy is a matter for the State's resolve.

I. Precedents cited to us as *contra* rest exclusively on the precept that the Constitution condemns State legislation that trespasses upon the privacy of the incidents of marriage, upon the sanctity of the home, or upon the nurture of family life. This and only this concern has been the justification for nullification of State regulation in this area. Review of plaintiffs' authorities will reveal these as the principles underlying the referenced decisions.

In *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), plaintiffs' chief reliance, the Court has most recently announced its views on the question here. Striking down a State statute forbidding the use of contraceptives, the ruling was put on

---

1. Plaintiffs would cast their complaint as a class action on behalf of themselves, as well as of all other homosexuals similarly situated, against all local officers, in addition to the defendants, who might prosecute plaintiffs and their class. Initially the court allowed the case to proceed as a tentative class action and full discovery was granted and obtained of all actual and latent defendants. Now, however, our judgment is that this case does not fit within the compass of F.R.Civ.P. 23. The question of class action *vel non* is one reserved to the discretion of the District Court. *City of New York v. International Pipe & Ceramics Corp.,* 410 F.2d 295, 298 (2 Cir. 1969). The prosecution of separate actions by or against individual members of the alleged classes would not create a risk of inconsistent or varying adjudications with respect to individual members of the class. F.R.Civ.P. 23(b)(1)(A). This is because the Attorney for the Commonwealth for the City of Richmond, as a party defendant, will be bound at future local trials by an adjudication upon the validity of the statute, and the Attorney General of Virginia will likewise be bound thereby on a future appeal from a prosecution anywhere in Virginia. In our judgment, therefore, the benefits which would justify proceeding as a class action will be realized without resort to that procedure.

the right of marital privacy—held to be one of the specific guarantees of the Bill of Rights—and was also put on the sanctity of the home and family. Its thesis is epitomized by the author of the opinion, Mr. Justice Douglas, in his conclusion:

"We deal with a right of privacy older than the Bill of Rights—older than our political parties, older than our school system. Marriage is a coming together for better or for worse, hopefully enduring and intimate to the degree of being sacred. It is an association that promotes a way of life, not causes; a harmony in living, not political faiths; a bilateral loyalty, not commercial or social projects. Yet it is an association for as noble a purpose as any involved in our prior decisions." p. 486, 85 S.Ct. p. 1682.

That *Griswold* is premised on the right of privacy and that homosexual intimacy is denunciable by the State is unequivocally demonstrated by Mr. Justice Goldberg in his concurrence, p. 499, 85 S.Ct. 1678, in his adoption of Mr. Justice Harlan's dissenting statement in *Poe v. Ullman,* 367 U.S. 497, 553, 81 S. Ct. 1752, 1782, 6 L.Ed.2d 989 (1961):

"Adultery, *homosexuality* and the like are sexual intimacies *which the State forbids* . . . but the intimacy of husband and wife is necessarily an essential and accepted feature of the institution of marriage, an institution which the State not only must allow, but which always and in every age it has fostered and protected. *It is one thing when the State exerts its power either to forbid extramarital sexuality* . . . or to say who may marry, but it is quite another when, having acknowledged a marriage and the intimacies inherent in it, it undertakes to regulate by means of the criminal law the details of that intimacy." (Emphasis added.)

Equally forceful is the succeeding paragraph of Justice Harlan:

"In sum, even though the State has determined that the use of contraceptives is as iniquitous as any act of extra-marital sexual immorality, the intrusion of the whole machinery of the criminal law into the very heart of marital privacy, requiring husband and wife to render account before a criminal tribunal of their uses of that intimacy is surely *a very different thing indeed from punishing those who establish intimacies which the law has always forbidden and which can have no claim to social protection.*" At p. 553, 81 S.Ct. at p. 1782. (Emphasis added.)

Justice Harlan's words are nonetheless commanding merely because they were written in dissent. To begin with, as heretofore observed, they were authentically approved in *Griswold.* Moreover, he was not differing with the majority there on the merits of the substantive case but only as to the procedural reason of its dismissal. At all events, the Justice's exegesis is that of a jurist of widely acknowledged superior stature and weighty whatever its context.

With his standing, what he had further to say in *Poe v. Ullman,* supra, is worthy of high regard. On the plaintiffs' effort presently to shield the practice of homosexuality from State incrimination by according it immunity when committed in private as against public exercise, the Justice said this:

"Indeed to attempt a line between public behavior and that which is purely consensual or solitary would be to withdraw from community concern a range of subjects with which every society in civilized times has found it necessary to deal. The laws regarding marriage which provide both when the sexual powers may be used and the legal and societal context in which children are born and brought up, as well as *laws forbidding adultery, fornication and homosexual practices which express the negative of the proposition,* confining sexuality to lawful marriage, form a pattern so

deeply pressed into the substance of our social life that any Constitutional doctrine in this area must build upon that basis." (P. 546, 81 S.Ct. p. 1778, accent added.)

Again:·

"Thus, I would not suggest that *adultery, homosexuality, fornication and incest are immune* from criminal enquiry, *however privately practiced.* So much has been explicitly recognized in acknowledging the State's rightful concern for its people's moral welfare. . . . But not to discriminate between what is involved in this case and either the traditional offenses against good morals or crimes which, though they may be committed anywhere, *happen to have been committed· or concealed in the home,* would entirely misconceive the argument that is being made." (Pp. 552–553, 81 S.Ct. p. 1782, accent added.)

Many states have long had, and still have, statutes and decisional law criminalizing conduct depicted in the Virginia legislation. The subject is comprehensively reviewed in *State of New Jersey v. Lair*, 62 N.J. 388, 301 A.2d 748, 58 A.L.R.3d 627 (1973) and in the accompanying ALR Annotation.

■ II. With no authoritative judicial bar to the proscription of homosexuality—since it is obviously no portion of marriage, home or family life—the next question is whether there is any ground for barring Virginia from branding it as criminal. If a State determines that punishment therefor, even when committed in the home, is appropriate in the promotion of morality and decency, it is not for the courts to say that the State is not free to do so. *Poe v. Ullman*, supra, 367 U.S. 497, 81 S.Ct. 1752, Harlan, J., dissenting at p. 550, 81 S.Ct. 1752; see also *California v. LaRue*, 409 U.S. 109, 114, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972). In short, it is an inquiry addressable only to the State's Legislature.

■ Furthermore, if the State has the burden of proving that it has a legitimate interest in the subject of the statute or that the statute is rationally supportable, Virginia has completely fulfilled this obligation. Fundamentally, the State action is simply directed to the suppression of crime, whether committed in public or in private. Both instances, as *California*, supra, recognizes, are within the reach of the police power.

■ Moreover, to sustain its action, the State is not required to show that moral delinquency actually results from homosexuality. It is enough for upholding the legislation to establish that the conduct is likely to end in a contribution to moral delinquency. Plainly, it would indeed be impracticable to prove the actuality of such a consequence, and the law is not so exacting.

If such a prospect or expectation was in the mind of the General Assembly of Virginia, the prophecy proved only too true in the occurrences narrated in *Lovisi v. Slayton*, 363 F.Supp. 620 (EDVa. 1973, now on appeal in the Fourth Circuit). The graphic outline by the District Judge there describes just such a sexual orgy as the statute was evidently intended to punish. The Lovisis, a married couple, advertised their wish "to meet people" and in response a man came to Virginia to meet the Lovisis on several occasions. In one instance the three of them participated in acts of fellatio. Photographs of the conduct were taken by a set camera and the acts were witnessed by the wife's daughters, aged 11 and 13. The pictures were carried by them to school.

Although a questionable law is not removed from question by the lapse of· any prescriptive period, the longevity of the Virginia statute does testify to the State's interest and its legitimacy. It is not an upstart notion; it has ancestry going back to Judaic and Christian law.[2]

2. ·Leviticus 18:22: "Thou shalt not lie with mankind, as with womankind: it is abomina-   tion." Again, 20:13: "If a man also lie with mankind, as he lieth with a woman, both of

The immediate parentage may be readily traced to the Code of Virginia of 1792.[3] All the while the law has been kept alive, as evidenced by periodic amendments, the last in the 1968 Acts of the General Assembly of Virginia, c. 427.

In sum, we believe that the sodomy statute, so long in force in Virginia, has a rational basis of State interest demonstrably legitimate and mirrored in the cited decisional law of the Supreme Court. Indeed, the Court has treated as free of infirmity a State law with a background similar to the Virginia enactment in suit. *Wainwright v. Stone,* 414 U.S. 21, 94 S.Ct. 190, 38 L.Ed.2d 179 (1973).

The prayers for a declaratory judgment and an injunction invalidating the sodomy statute will be denied.

MERHIGE, District Judge (dissenting).

I am in full accord with the majority as to their conclusion that this action does not fit within the compass of Fed. R.Civ.P. 23. Regretfully, however, my views as to the constitutionality of the statute in question, as it applies to consenting adults acting in the privacy of their homes, does not conform with theirs. In my view, in the absence of any legitimate interest or rational basis to support the statute's application we must, without regard to our own proclivities and reluctance to judicially bar the state proscription of homosexuality, hold the statute as it applies to the plaintiffs to be violative of their rights under the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States. The Supreme Court decision in *Griswold v. Connecticut,* 381 U.S. 479, 499, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), is, as the majority points

out, premised on the right of privacy, but I fear my brothers have misapplied its precedential value through an apparent over-adherence to its factual circumstances.

The Supreme Court has consistently held that the Due Process Clause of the Fourteenth Amendment protects the right of individuals to make personal choices, unfettered by arbitrary and purposeless restraints, in the private matters of marriage and procreation. *Roe v. Wade,* 410 U.S. 113, 153, 169, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *accord Doe v. Bolton,* 410 U.S. 179, 93 S. Ct. 739, 35 L.Ed.2d 201 (1973). See also *Griswold v. Connecticut, supra,* 381 U.S. 479, 498, 85 S.Ct. 1678 (Harlan, J., concurring). I view those cases as standing for the principle that every individual has a right to be free from unwarranted governmental intrusion into one's decisions on private matters of intimate concern. A mature individual's choice of an adult sexual partner, in the privacy of his or her own home, would appear to me to be a decision of the utmost private and intimate concern. Private consensual sex acts between adults are matters, absent evidence that they are harmful, in which the state has no legitimate interest.[1]

To say, as the majority does, that the right of privacy, which every citizen has, is limited to matters of marital, home or family life is unwarranted under the law. Such a contention places a distinction in marital-nonmarital matters which is inconsistent with current Supreme Court opinions and is unsupportable.

In my view, the reliance of the majority on Mr. Justice Harlan's dissenting statement in *Poe v. Ullman,* 367 U.S.

---

them have committed an abomination: they shall surely be put to death; their blood shall be upon them"

IV. Cooley's Blackstone's Commentaries on the Laws of England (1753) § 216.

3. "Sodomy" was used in the earlier laws interchangeably with buggery and other "unnatural sex acts". Davis, *Criminal Law.* (1838) p. 133.

1. *See Cotner v. Wenry,* 394 F.2d 873 (7th Cir. 1968) (*dicta*); *Buchanan v. Batchelor,* 308 F.Supp. 729 (N.D.Tex.1970), *rev'd on other grounds sub nom, Wade v. Buchanan,* 401 U.S. 989, 91 S.Ct. 1221, 28 L.Ed.2d 526 (1971); *State v. Elliott,* 539 P.2d 207 (N.M. Ct.App., 1975).

497, 553, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961), is misplaced. An analysis of the cases indicates that in 1965 when *Griswold*, which invalidated a statute prohibiting the use of contraceptives by married couples, was decided, at least three of the Court,[1a] relying primarily on Mr. Justice Harlan's dissent in *Poe v. Ullman*, and Mr. Justice Harlan himself, would not have been willing to attach the right of privacy to homosexual conduct. In my view, *Griswold* applied the right of privacy to its particular factual situation. That the right of privacy is not limited to the facts of *Griswold* is demonstrated by later Supreme Court decisions. After *Griswold*, by virtue of *Eisenstadt v. Baird*, 405 U.S. 430, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972), the legal viability of a marital-nonmarital distinction in private sexual acts if not eliminated, was at the very least seriously impaired. In *Eisenstadt, supra*, the Court declined to restrict the right of privacy in sexual matters to married couples:

> Yet the marital couple is not an independent entity with a mind and heart of its own, but an association of two individuals each with a separate intellectual and emotional makeup. If the right of privacy means anything, it is the right of the *individual*, married or single, to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child. 405 U.S. at 453, 92 S.Ct. at 1038.

See also, *Lovisi v. Slayton*, 353 F.Supp. 620, 625 (E.D.Va.1973).[2]

In significantly diminishing the importance of the marital-nonmarital distinction, the Court to a great extent vitiated any implication that the state can, as suggested by Mr. Justice Harlan in *Poe v. Ullman*, forbid extra-marital sexuality, and such implications are no longer fully accurate.

> It is one thing when the State exerts its power either to forbid extra-marital sexuality altogether, or to. say who may marry, but it is quite another when, having acknowledged a marriage and the intimacies inherent in it, it undertakes to regulate by means of the criminal law the details of that intimacy. 367 U.S. 498, at 553, 81 S.Ct. 1752, at 1782 (1961) (Harlan, J., dissenting).

*Griswold, supra*, in its context, applied the right of privacy in sexual matters to the marital relationship. *Eisenstadt, supra*, however, clearly demonstrates that the right to privacy in sexual relationships is not limited to the marital relationship. Both *Roe, supra*, and *Eisenstadt, supra*, cogently demonstrate that intimate personal decisions or private matters of substantial importance to the well-being of the individuals involved are protected by the Due Process Clause. The right to select consenting adult sexual partners must be considered within this category. The exercise of that right, whether heterosexual or homosexual, should not be proscribed by state regulation absent compelling justification.

This approach does not unqualifiedly sanction personal whim. If the activity in question involves more than one participant, as in the instant case, each must be capable of consenting, and each must in fact consent to the conduct for the right of privacy to attach. For example, if one of the participants in homosexual contact is a minor, or force is used to coerce one of the participants to yield, the right will not attach. *Towley v. Peyton*, 303 F.Supp. 581 (W.D.Va. 1969); *Hughes v. State*, 14 Md.App. 497, 287 A.2d 299 (1972). Similarly, the right of privacy cannot be extended

---

1a. *Griswold v. Connecticut, supra*, 381 U.S. 479, 486, 85 S.Ct. 1678 (1964) (Goldberg, J., with whom Chief Justice Warren and Brennan, J., join, concurring).

2. *Lovisi v. Slayton*, argued before a three member panel of the Court of Appeals for this Circuit, is currently awaiting argument before the Court en banc.

to protect conduct that takes place in publicly frequented areas. *Smayda v. United States*, 352 F.2d 251 (9th Cir. 1965); *Lovisi v. Slayton, supra*, 363 F. Supp. 620 (E.D.Va.1973). However, if the right of privacy does apply to specific courses of conduct, legitimate state restriction on personal autonomy may be justified only under the compelling state interest test. See *Roe v. Wade, supra*, 410 U.S. 113, 215–18, 93 S.Ct. 705 (Douglas, J., concurring).

Plaintiffs are adults seeking protection from the effects of the statute under attack in order to engage in, homosexual relations in private. Viewing the issue as we are bound to, as Mr. Justice Blackmun stated in *Roe v. Wade, supra*, at 116, 93 S.Ct. at 709, "by constitutional measurement, free of emotion and predilection," it is my view that they are entitled to be protected in their right to privacy by the Due Process Clause.[3]

The defendants, represented by the highest legal officer of the state, made no tender of any evidence which even impliedly demonstrated that homosexuality causes society any significant harm. No effort was made by the defendants to establish either a rational basis or a compelling state interest so as to justify the proscription of § 8.1–212 of the Code of Virginia, presently under attack.[4] To suggest, as defendants do, that the prohibition of homosexual conduct will in some manner encourage new heterosexual marriages and prevent the dissolution of existing ones is unworthy of judicial response. In any event, what we know as men is not forgotten as judges —it is difficult to envision any substantial number of heterosexual marriages being in danger of dissolution because of the private sexual activities of homosexuals.

On the basis of this record one can only conclude that the sole basis of the proscription of homosexuality was what the majority refers to as the promotion of morality and decency. As salutary a legislative goal as this may be, I can find no authority for intrusion by the state into the private dwelling of a citizen. *Stanley v. Georgia*, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969) teaches us that socially condemned activity, excepting that of demonstrable external effect, is and was intended by the Constitution to be beyond the scope of state regulation when conducted within the privacy of the home. "The Constitution extends special safeguards to the privacy of the home, . . . ." *United States v. Orito*, 413 U.S. 139, 43 S.Ct. 2674, 37 L.Ed.2d 513 (1973).[5] Whether the guarantee of personal privacy springs from the First, Fourth, Fifth, Ninth, the penumbra of the Bill of Rights, or, as I believe, in the concept of liberty guaranteed by the first section of the Fourteenth Amendment, the Supreme Court has made it clear that fundamental rights of such an intimate facet of an individual's life as sex, absent circumstances warranting intrusion by the state, are to be respected. My brothers, I respectfully suggest, have by today's ruling misinterpreted the issue —the issue centers not around morality or decency, but the constitutional right of privacy.

I respectfully note my dissent.

3. At least two state courts have reached a similar conclusion. *United States v. Doe*, Cr.Nos. 21860–71, 37025–72 (Superior Ct. D.C., Feb. 21, 1973); *People v. Schwartz* (Superior Ct. of Cal., Los Angeles County, Sept. 11, 1972).

4. See, Note, The Constitutionality of Laws Forbidding Private Homosexual Conduct, 72 Mich.L.Rev. 1613 (1975), for discussion on the lack of empirical data on adverse effect of homosexuals on the social system.

5. See also Ravin v. State, 537 P.2d 494 (Alaska 1975).