## CIRCUIT COURT OF THE CITY OF ROANOKE

Commonwealth of Virginia

v.

Everett Elmo Davidson

### April 29, 1999

BY JUDGE RICHARD C. PATTISALL

The Court has before it seventeen male defendants who stand indicted by the Grand Jury of the Circuit Court of the City of Roanoke at its November 1998 term of violating § 18.2-29 of the Code of Virginia, 1950, as amended, and have filed motions to dismiss the charges against them.

All of the alleged acts occurred in Wasena Park, a public park in the City of Roanoke, between each defendant and a male undercover Roanoke City Police Officer. Each defendant is alleged to have offered to engage in oral sex with an undercover officer. Thirteen of the defendants are alleged to have offered to engage in the act of oral sex at various locations with the park, while four of the defendants did not indicate a specific place to commit the act. It is alleged that no defendant suggested that the act take place in the residence of a defendant or of the undercover officer or a guestroom that the parties might acquire the use of.

The defendants concede, for the purpose of their motions, that even though they deny having solicited oral sex from the officers as defined in § 18.2-29, Code of Virginia, 1950, as amended, the evidence as alleged, taken in the light most favorable to the Commonwealth, would be sufficient to enable reasonable jurors to find them guilty as charged.

The Commonwealth concedes that if § 18.2-361(A) of the Code of Virginia, 1950, as amended, is unconstitutional, then the indictments against the defendants must be dismissed.

The issues presented in this case are:

(1) Does the statute establish the sectarian religious views of some while infringing on free exercising of the religious views of others?

(2) Does the statute violate the prohibitions of the United States Constitution and Virginia Constitutions against "cruel and unusual punishment"?

(3) Does the United States Constitution's right of privacy require invalidation of the statute?

(4) Does the Commonwealth of Virginia's constitutional right of privacy require invalidation of the statute?

(5) Do the defendants have standing in this Court to facially challenge the statute?

### Religious Freedom

Defendants contend that the Virginia sodomy statute has the purpose and effect of "establishing" the sectarian religious views of some people and infringing on the "free exercise" of the religious views of others.

The Commonwealth and defendants agree that the case of *Lemon v. Kurtzman*, 403 U.S. 602 (1971), defines what criteria, which in order to be a valid exercise of state power in the face of an establishment clause challenge, a statute must meet. First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; and third, the statute must not foster an excessive government entanglement with religion.

Is not the desire of the state to promote the avoidance of moral delinquency in the Commonwealth a proper secular legislative purpose along with concerns about the public health, safety, and welfare of its citizens? These concerns were answered in the case *of Doe v. Commonwealth's Attorney of the City of Richmond*, 403 F. Supp. 1199 (E.D. Va. 1975), aff'd 425 U.S. 901 (1976), rehearing denied, 425 U.S. (1976). The Court there ruled that:

> if a state determines that punishment therefor, even when committed in the home, is appropriate in the promoting of morality and decency, it is not for the courts to say that the state is not free to do so. *Id.* at 1202. Moreover, to sustain its action, the state is not required to show that moral delinquency actually results from homosexuality. It is enough for upholding the legislation to establish that the conduct is likely to end in a contribution to moral delinquency.

Although a questionable law is not removed from question by the lapse of any prescriptive period, the longevity of the Virginia statute does testify to the state's interest and its legitimacy. *Id.* at 1202.

The Court can find no evidence in the record to support the theory that the primary or principal state effort is to either advance or inhibit any religious views. The statute simply defines one particular act, sodomy, declares said act unlawful, and makes it a Class 6 felony.

Finally, the record is devoid of evidence that the state's resources have been used to further any religious goals or interests or inhibit or prohibit such. No defendant has maintained that homosexual oral sex is a component of his religious faith. Defendants having failed to show any religious purpose, any advancement or inhibiting of religion, or any government entanglement in religion, the defendants' Motion to Dismiss upon the grounds of a violation of their First Amendment rights are denied.

### Cruel and Unusual Punishment

Defendants also contend that the imposition of a felony conviction and the mere possibility of a jail term or imprisonment violate the provisions of the Eighth Amendment to the U. S. Constitution and Article I, Section 9, of the Constitution of Virginia against "cruel and unusual punishments."

Defendants cite Justice Powell's concurring opinion in *Bowers v. Hardwick*, 478 U.S. 186, 106 S. Ct. 2841, 92 L. Ed. 2d 140 (1986), wherein Justice Powell raised the question *sua sponte* of a prison sentence, particularly a sentence of long duration, creating a serious Eighth Amendment issue. Here, as in that case, the defendants have not even been tried, much less convicted or sentenced, and the Court finds that unless and until defendants are tried, convicted, and sentenced in such a severe manner as would shock the conscience of a court called to review such a sentence, any Eighth Amendment or Article I, Section 9, challenge is premature. There being no punishment imposed, said issue does not now exist. Defendants' motion to dismiss on this ground is overruled.

*Right to Privacy*
*United States Constitution*

Defendants next argue that a fundamental constitutional right of privacy must be inferred from the explicit provisions of the First and Ninth Amendments to the Constitution of the United States.

The statute defendants contend that violates this right is § 18.2-361, Code of Virginia, 1950, as amended, which provides:

> A. If any person carnally knows in any manner any brute animal, or carnally knows any male or female person by the anus or by or with the mouth, or voluntarily submits to such carnal knowledge, he or she shall be guilty of a Class 6 felony, except as provided in subsection B.

The statute is neutral as to gender, marital status, or sexual orientation and applies across the entire spectrum of the human species without exception to age or location of the prohibited act.

The U.S. Supreme Court has ruled in the case of *Bowers v. Hardwick*, 478 U.S. 186, 92 L. Ed. 2d 140, 106 S. Ct. 2841 (1986), that there is no fundamental right granted by the Federal Constitution to homosexuals to engage in sodomy, even in privacy.

The Georgia statute upheld in this case was substantially the same as Virginia's statute. The Virginia statute was unsuccessfully challenged on Federal Constitutional grounds that it violated the First, Fifth, Eighth, Ninth, and Fourteenth Amendments before the United States Supreme Court in the case of *Doe v. Commonwealth's Attorney, ex rel. City of Richmond*, 403 F. Supp. 1199 (E.D. Va. 1975), aff'd 425 U.S. 901 (1976), reh'g denied, 425 U.S. 985 (1976).

The Supreme Court affirmed the District Court's ruling that the Virginia statute making sodomy a crime is constitutional when applied to a male, whose regular and active homosexual relations in private with another consenting adult male, results in his being prosecuted under said statute.

The *Doe* court, with facts quite the same as exist here, applied the holding of the United States Supreme Court in *Griswold v. Connecticut*, 381 U.S. 479 (1965), which recognized the right of marital privacy to be one of the specific guarantees of the Bill of Rights and the sanctity of the home and family.

The right of marital privacy was held to be one of the specific guarantees of the Bill of Rights and was also put on the sanctity of the home and family.

Its thesis is epitomized by the author of the opinion, Mr. Justice Douglas, in his conclusion:

> We deal with a right of privacy older than the Bill of Rights, older than our political parties, older than our school system. Marriage is a coming together for better or for worse, hopefully enduring and intimate to the degree of being sacred. It is an association that promotes a way of life, not causes; a harmony in living, not political faiths; a bilateral loyalty, not commercial or social projects. Yet it is an association for as noble as any involved in our prior decisions.

*Id.* at 486, 85 S. Ct. at 1682.

That *Griswold* is premised on the right of privacy and that homosexual intimacy is denunciable by the Statute is unequivocally demonstrated by Mr. Justice Goldberg in his concurrence. *Id.* at 499, 85 S. Ct. 1678, in his adoption of Mr. Justice Harlan's dissenting statement in *Poe v. Ullman*, 367 U.S. 497, 553, 81 S. Ct. 1752, 1782, 6 L. Ed. 2d 989 (1961):

> Adultery, homosexuality, and the like are sexual intimacies which the State forbids ... but the intimacy of husband and wife is necessarily an essential and accepted feature of the institution of marriage, an institution which the State not only must allow, but which always and in every age it has fostered and protected. It is one thing when the State exerts its power either to forbid extramarital sexuality ... or to say who may marry, but it is quite another when, having acknowledged a marriage and the intimacies inherent in it, it undertakes to regulate by means of the criminal law the details of that intimacy.

Equally forceful is the succeeding paragraph of Justice Harlan:

> In sum, even though the State has determined that the use of contraceptives is as iniquitous as any act of extra-marital sexual immorality, the intrusion of the whole machinery of the criminal law into the very heart of marital privacy, requiring husband and wife to render account before a criminal tribunal of their uses of that intimacy is surely a very different thing indeed from punishing those who establish intimacies which the law has always forbidden, and which can have no claim to social protection.

*Id.* at 553, 81 S. Ct. at 1782.

Justice Harlan's words are nonetheless commanding merely because they were written in dissent. To begin with, as heretofore observed, they were approved in *Griswold*. Moreover, he was not differing with the majority there on the merits of the substantive case but only as to the procedural reason of its dismissal; at all events, the Justice's exegesis is that of a jurist of widely acknowledged superior statute and weighty whatever its context.

With his standing, what he has further to say in *Poe v. Ullman, supra*, is worthy of high regard. On the plaintiff's effort presently to shield the practice of homosexuality from State incrimination by according it immunity when committed in private as against public exercise, the Justice said this:

> Indeed to attempt a line between public behavior and that which is purely consensual or solitary would be to withdraw from community concern a range of subjects with which every society in civilized times has found it necessary to deal. The laws regarding marriage which provide both when the sexual powers may be used and the legal and societal context in which children are born and brought up, as well as laws forbidding adultery, fornication, and homosexual practices which express the negative of the proposition, confining sexuality to lawful marriage, for a pattern so deeply pressed into the substance of our social life that any Constitutional doctrine in this area must build upon that basis.

*Id.* at 546, 81 S. Ct. at 1778. Again:

> Thus, I would not suggest that adultery, homosexuality, fornication, and incest are immune from criminal inquiry, however privately practiced. So much has been explicitly recognized in acknowledging the State's rightful concern for its people's moral welfare ... But not to discriminate between what is involved in this case and either the traditional offenses against good morals or crimes which, though they may be committed anywhere, happen to have been committed or concealed in the home, would entirely misconceive the argument that is being made.

*Id.* at 552-53, 81 S. Ct. at 1782.

Many states have long had, and still have, as does Virginia, statutes and decisional law criminalizing conduct depicted in the Virginia legislation. Therefore, the Court finds that the statute does not violate the protections of the Constitution as applied in these cases.

### Virginia Constitution

Defendants make the argument that there is an inherent fundamental state constitutional right of privacy guaranteed by the provisions of the Declaration of Rights of the State of Virginia, Article I of the Constitution of Virginia.

Defendants argue here essentially the same case as was argued in *Bowers v. Hardwick,* 478 U.S. 186, 106 S. Ct. 2841, 92 L. Ed. 2d 140 (1986): that homosexual sodomy is protected by the Federal Constitution, and even though the United States Supreme Court in that case said otherwise, the closeness of the decision, five to four, and the subsequent public statements of Justice Powell saying his vote with the majority there "was probably a mistake" and that the dissent "had the better of the argument" render that case into disrepute and legal disrespect destined eventually to be overruled. Nevertheless, *Bowers v. Hardwick* has not been overruled and is the law of the land which this court is required to follow unless and until it is overruled. Therefore, the Court has found that there is no federal constitutionally protected right of homosexuals to engage in sodomy even in the privacy of the home.

Defendants' attack upon the statute is that the Constitution of Virginia provides an inherent, fundamental right of privacy guaranteed by the provisions of the Declaration of Rights of the State of Virginia, Article I. Constitutional challenges to these statutes on alleged Federal Constitution violations have been before the U. S. District Court for the Eastern District of Virginia, *Doe v. Commonwealth's Atty. for the City of Richmond,* 403 F. Supp. 1199 (1975), and on appeal before the U. S. Supreme Court, wherein the Supreme Court affirmed the District Court's holding that the statute was not unconstitutional when applied to active and regular homosexual relations between adult males, consensually and in private, aff'd 425 U.S. 901 (1976), reh'g denied, 425 U.S. 985 (1976).

An attack against the statute on constitutional grounds of violation of the Virginia Constitution appears not to have been considered by either the Federal Courts or the Virginia Court of Appeals or the Virginia Supreme Court, and thus the defendants challenge to the statute on state constitutional grounds appears to be an issue of first impression.

Defendants argue that the Article I, § 1, Constitution of Virginia Declaration of Independence-like language, which is not contained in its counterpart in the Constitution of the United States, mandates an expansive interpretation of "inherent rights" that a fundamental state constitutional right of privacy can and should be judicially inferred.

The Court finds there is no question about this right to privacy and that this right is provided by the Constitution of this Commonwealth; that the Constitution provides equality and freedom of men, their inherent right to the enjoyment of life, liberty, property, and the pursuit of happiness; that no person shall be deprived of such without due process; that no unreasonable searches or seizures will be permitted; and to the free exercising of religion to profess, argue, and maintain their opinions in matters of religion. Article I, Constitution of Virginia.

However, these state constitutional rights to privacy must measure up to the same requisite that one must have standing to enforce these rights and can only enforce said rights in the context that a law is being attempted to be applied against one under the factual controversy one presents before the Court for adjudication.

Virginia in 1791, when the Bill of Rights to the United States Constitution was ratified, followed the English common law outlawing sodomy. Virginia had a statute forbidding sodomy when the Fourteenth Amendment to the United States Constitution was ratified in 1868 and has amended that statute from time to time until the present day statute.

The Court has been unable to discover any controlling legal authority to support the assertion of defendants that the Virginia constitutional right of privacy can be inferred and interpreted more broadly and expansively than its counterpart of the United States Constitution, and thus defendants' Motion to Dismiss on this ground is overruled.

### Defendants' Standing

Defendants next argue that they have standing to raise the fundamental privacy rights of themselves and others in opposition to the enforcement of Code § 18.2-361(A) and contend they have standing to bring a facial challenge to § 18.2-361(A).

Defendants cite *Griswold v. Connecticut*, 381 U.S. 479 (1965), to support their position. In that case, a Planned Parenthood official and a doctor were charged as being accessories to the offense as defined by the statute in question. These defendants had given professional advice, instruction, and

information to their client-patients who were married husbands and wives. The Supreme Court held in this case that the appellants had standing to raise the constitutional rights of married people with whom they had a professional relationship because the rights of husband and wife pressed here are likely to be diluted or adversely affected unless those rights are considered in a suit involving those who have this kind of confidential relationship to them. The court at page 482 stated: "This law, however, operates directly on an intimate relation of husband and wife and their physician's role in one aspect of that relation."

The cases before the Court here do not demonstrate any professional or confidential relationship between defendants and any other parties. The defendants are charged with the act of soliciting individuals to commit a felony with each of them. Each defendant allegedly was a ready and willing participant with a police officer to commit an unlawful act that could not occur without defendants' direct participation. Defendants are obviously not engaged in the giving of professional advice, information, or instruction to others who may want to engage in the act, as part of a professional or confidential relationship but instead seek to be a participant of the forbidden act with complete strangers with whom they have no previous relationship whatsoever. Defendants have not put forth any viable connection to any permissible relationship that would provide standing to facially challenge the statute involved herein. *United States v. Raines*, 362 U.S. 17 (1960), holds that a defendant cannot make a facial challenge to a statute based on some conceivable circumstances in which the statute could be unconstitutionally applied to a hypothetical third party. There are exceptions to this general rule: the chilling of First Amendment speech rights of third parties; when one would suffer economic damages as a result of the rights of third parties being violated; and when third parties would be denied a forum to assert their rights. The record contains no contention that freedom of speech under the First Amendment is at issue here. The same is also true in that there are no claims of any economic loss suffered. Nor has there been any showing that any other third parties who might be charged under the statute will be deprived of their day in court to assert their rights in challenging the statute.

The cases before the Court reveal that defendants are charged with violation of Code § 18.2-29, soliciting an individual to commit a felony, to wit, a violation of § 18.2-361(A). The alleged facts surrounding these cases are that defendants solicited undercover police officers in a public city park in the City of Roanoke to engage in oral sex. Allegedly, not one of the defendants suggested the oral sex act take place in the privacy of a home, guestroom, or

other private premises. It is these acts that the statute is being applied to, not to some conceivable act that a hypothetical third party might engage in consensually at private premises. Common sense informs one that there can be no expectation of privacy to an act that is performed in public. The defendants must seek their remedies according to the facts they bring to the court, not to imaginable or conceivable fact, nor hypothetical parties, but facts applicable to themselves.

Therefore, the Court concludes that the Commonwealth has a rational basis to protect the decency, morality, and welfare of its citizens and the suppression of crime within its borders, all of which is in accordance with the decisions of law rendered by the U. S. Supreme Court.

The case submitted on behalf of defendants herein is one that properly lies with the General Assembly of Virginia not the courts, as the issues here are a matter of policy that the legislative branch of government must resolve rather than the judicial branch.

The defendants' Motions to Dismiss on this ground are overruled.

The Court having thoroughly examined and duly considered the Motions to Dismiss raised by the defendants denies said motions, and these cases are continued on the docket of this Court.