# CIRCUIT COURT OF FAIRFAX COUNTY

Commonwealth of Virginia

    v.

Douglas A. Paris

November 16, 1999

Case Nos. (Criminal) K96062 and K96063

BY JUDGE DENNIS J. SMITH

    Douglas A. Paris was indicted on two counts of sodomy. It was charged that on or about June 27, 1998, and June 30, 1998, Mr. Paris did carnally know Jeremy Paris, by the mouth. At argument, on September 3, 1999, it was agreed that the charges involved oral sex with a minor. The victim's age is irrelevant, however, to the crime as charged. After argument, the court found that the acts of sodomy committed by Mr. Paris are within the reach of § 18.2-361 of the Virginia Code and that the sodomy statute under which Mr. Paris was charged is constitutional. As indicated to counsel, the Court now offers this letter opinion explaining its analysis, rationale, and ruling more fully.

    Mr. Paris moved to dismiss the indictments against him on the grounds that § 18.2-361 of the Virginia Code violates Article I, § 1, of the Virginia Constitution by criminalizing his right to engage in consensual homosexual acts. Specifically, Mr. Paris challenged § 18.2-361 as applied to his private activity. Paris suggests that Article I, § 1, of the Virginia Constitution protects his right to privately perform sexual acts declared felonious by the Virginia General Assembly.

    At the pretrial hearing, Mr. Paris also suggested that the act of sodomy was not criminal in 1776 when Article I, § 1, of the Virginia Constitution was adopted. The prohibition of sodomy is traceable to English statutes that directly influenced early American law. The first laws of the Jamestown

colony incorporated the English prohibition of sodomy. See Arthur E. Brooks, *Doe and Dronenburg: Sodomy Statutes Are Constitutional*, 26 Wm. & Mary L. Rev. 645, 649 (1985).

Further, even though no specific sodomy statute existed at the time of ratification of the Commonwealth's Bill of Rights, Virginia had adopted the English Common Law. See *Bowers v. Hardwick*, 478 U.S. 186, 193-94, n. 5 (1986). The Commonwealth's sodomy statute may be traced to a 1792 statute that condemned buggery with man. See Arthur E. Brooks, *Doe and Dronenburg: Sodomy Statutes Are Constitutional*, 26 Wm. & Mary L. Rev. 645, 650 (1985). Throughout early American jurisprudence, the terms sodomy and buggery were used interchangeably. See *Doe v. Commonwealth's Attorney for City of Richmond*, 403 F. Supp. 1199, 1203, n. 3 (E.D. Va. 1975). Hence, this court logically concludes at the adoption of the Virginia Constitution, sodomy was criminalized.

Implicit in the Defendant's assertion is that the Virginia Constitution provides him greater rights than the Federal Constitution. This Court does not agree that either the Federal Constitution or the Commonwealth's Constitution protect Mr. Paris' right to engage in sodomy.

Judicial analysis regarding the validity of the statute starts with the well-established proposition that properly-enacted laws are presumed constitutional. See *Young v. Commonwealth*, 101 Va. 853, 45 S.E. 327 (1903); *Moses v. Commonwealth*, 27 Va. App. 293, 498 S.E.2d 451 (1998). Furthermore, doubts regarding a statute's constitutionality are resolved in favor of its validity. *Id*. If the statute does not abridge a fundamental right or affect a suspect classification, then the Court should uphold the legislation if it has a "reasonable relation to a proper purpose and [is] neither arbitrary nor discriminatory." *Duke v. County of Pulaski*, 219 Va. 428, 438, 274 S.E.2d 824, 829 (1978).

In *Griswold v. Connecticut*, the United States Supreme Court (speaking through Justice Douglas) opined "that specific guarantees in the Bill of Rights have penumbras, formed by emanations from those guarantees that help give them life and substance." *Griswold v. Connecticut*, 381 U.S. 479, 484 (1965). However, the U. S. Supreme Court has been careful to limit constitutional protection through the vague concept of "penumbras" to fundamental rights relating to marriage, family, and procreation. As stated in *Doe v. Duling*, 782 F.2d 1202, 1207 (1986):

> Authority, however, achieves acceptance through scrupulous exercise. The Constitution delegates to the legislative and executive branches, not to federal courts, the establishment of broad social agendas and

the expression of ideals of public morality. The Court is most vulnerable and comes nearest to illegitimacy when it deals with judge-made constitutional law having little or no cognizable roots in the language or design of the Constitution.

The judiciary must not invent rights but must instead interpret laws and constitutions and enforce rights granted to the people by those documents. In his dissent in *Adamson v. California*, 332 U.S. 46 (1947), Justice Black asserted the position that substantive due process rights are coextensive with those rights specifically enumerated in the Constitution. This position was rejected then and continues to be rejected today, and while this court does not subscribe to all of the principles set out in his opinion, he sounded a clarion call regarding the unconstitutional nature of judicially-established rights which still resounds today. Justice Black wrote:

> Since *Marbury v. Madison* was decided, the practice has been firmly established, for better or worse, that courts can strike down legislative enactments, which violate the Constitution. This process, of course, involves interpretation; and since words can have many meanings, interpretation obviously may result in contraction or extension of the original purpose of a constitutional provision thereby affecting policy. But to pass upon the constitutionality of statutes by looking to the particular standards enumerated in the Bill of Rights and other parts of the Constitution is one thing; to invalidate statutes because of application of *natural law* deemed to be above and undefined by the Constitution is another. In the one instance, courts proceeding within clearly-marked constitutional boundaries seek to execute policies written into the Constitution[.] [I]n the other, they roam at will in the limitless area of their own beliefs as to reasonableness and actually select policies, a responsibility, which the Constitution entrusts to the legislative representatives of the people.

*Adamson v. California*, 332 U.S. 46, 90-92 (1947) (citation omitted, emphasis added, footnote omitted, and punctuation altered).

In *Bowers v. Hardwick*, 478 U.S. 186 (1986), the United States Supreme Court examined the issue of whether the Federal Constitution confers a fundamental right upon homosexuals to engage in sodomy. The Supreme Court answered in the negative and refused to invalidate the Georgia sodomy statute on constitutional grounds. *See Bowers*, 478 U.S. at 196. Writing for the majority, Justice White concluded that not all "private sexual conduct between

consenting adults is constitutionally insulated from state proscription." 478 U.S. at 191. Accordingly, individual states may choose to criminalize sexual conduct of their citizens. *See generally, Doe v. Commonwealth's Attorney for City of Richmond*, 403 F. Supp. 1199 (E.D. Va. 1975).

Mr. Paris asks this Court to follow the lead of the Kentucky Supreme Court, or the Pennsylvania Supreme Court, which invalidated criminal sodomy statutes on the grounds of privacy and equal protection. See *Commonwealth v. Wasson*, 842 S.W.2d 487 (Ky. 1993); *People v. Bonadio*, 415 A.2d 47 (Pa. 1980). As noted herein, the United States Supreme Court has specifically rejected attacks on the constitutionality of sodomy statutes based on the Federal Constitution. See *Bowers*, 478 U.S. at 196. Mr. Paris argues that Article I, § 1, of the Virginia Constitution provides broader protection than that afforded by the U. S. Constitution. Article I, § 1, states:

> *Equality and Rights of Men.* That all men are by nature equally free and independent and have certain inherent rights, of which, when they enter into a state of society, they cannot, by any compact, deprive or divest their posterity; namely, the enjoyment of life and liberty, with the means of acquiring and possession property, and pursuing and obtaining happiness and safety.

This Article of the Virginia Constitution is part of Virginia's Bill of Rights and is aspirational in nature. In fact, at the time of the adoption of the 1971 Constitution, there was discussion regarding the elimination of this provision as it may not be judicially enforceable. See A. E. Dick Howard, *Commentaries on the Constitution of Virginia*, 21 (1974) (discussing Governor Mills E. Godwin's opening address to the Virginia Assembly, in January 1968, regarding the creation of a Commission on Constitutional Revision). It was retained, however, and must be given effect where possible as it reflects our nation's political philosophies and ideological heritage. "It has a symbolic value as a reflection of ... principles which the citizenry holds inviolate." A. E. Dick Howard, *Commentaries on the Constitution of Virginia*, 55 (1974) ("[A] state bill of rights is not only a statement of legal principles and rules, but also a repository of some of the cardinal ideals and goals toward which the state and its citizens aspire."). The legislature, however, consisting of elected representatives of the people, is granted policing power which authorizes it to limit a person's "enjoyment of life and liberty ... and pursuit of happiness" if the limiting law pertains to public health, safety, or morals. See note 2 at 64; see also *Young v. Commonwealth*, 101 Va. 853, 45 S.E. 327

(1903). Accordingly, this Court concludes that Article I, § 1, of the Virginia Constitution provides no greater protection than the federal Constitution.

With regard to Paris's equal protection argument, Virginia's sodomy statute criminalizes all acts of sodomy, heterosexual and homosexual.[1] The General Assembly did not draw a distinction between the people who commit similarly prohibited acts under this statute. In short, all persons — regardless of sexual orientation — are treated in the same fashion by the statute's prohibition. Thus, it is not necessary to apply an equal protection analysis. See *Branche v. Commonwealth*, 25 Va. App. 480, 489 S.E.2d 692 (1997) (upholding the constitutionality of § 18.2-29 and the prohibition on the solicitation of a felony, in this case oral sodomy).

Nonetheless, were this court to analyze the statute pursuant to the Equal Protection Clause of the Fourteenth Amendment because it classifies acts typically engaged in by homosexuals as a felony, the result would not differ. As previously noted, the sodomy statute does not infringe upon a fundamental right. See generally, *Bowers v. Hardwick*, 478 U.S. 186 (1986). Even if targeted at homosexuals, the Virginia sodomy statute does not target a recognized suspect class. *Thomasson v. Perry*, 80 F.3d 915, 928 (4th Cir. 1996). Accordingly, the statute is not reviewed using a strict scrutiny test, but rather a rational basis scrutiny test. See *Heller v. Doe*, 509 U.S. 312 (1993); see also *Miller v. Locher Silica Corp.*, 12 Va. App. 1213, 408 S.E.2d 566 (1991). "[Courts] will uphold a law that neither burdens a fundamental right nor targets a suspect class so long as the legislative classification bears a rational relation to some independent and legitimate legislative end." *Romer v. Evans*, 517 U.S. 620 (1996).[2] Additionally, suspect or quasi-suspect classes entitled to heightened scrutiny are limited to groups generally defined by their status, such as race, ethnic origin, gender, and illegitimacy, and not by the conduct in which they engage. See *Able v. United States*, 155 F.3d 628 (2d Cir. 1998).

The question before the court is whether the statute is constitutional, and, as stated in *Doe v. Commonwealth's Attorney for City of Richmond*, "[t]he wisdom or policy [of the statute] is a matter for the state's resolve." 403 F. Supp. at 1202-03; see also *Bowers*, 478 U.S. at 190. "If a State determines

---

[1] This court declines to address the possible unconstitutional application of § 18.2-361 to heterosexual acts committed within a marriage. See generally, *Lovisi v. Slayton*, 539 F.2d 349 (4th Cir. 1976).

[2] Notably, sexual practices of polygamists have likewise been made criminal by state prohibitions. See *Romer v. Evans*, 517 U.S. 620, 647 (1996) (Scalia, J., dissenting opinion).

that punishment [for sodomy], even when committed in the home, is appropriate in the promotion of morality and decency, it is not for the courts to say that the State is not free to do so." 403 F. Supp. at 1202. The sodomy statute was enacted to prohibit certain sexual conduct deemed by the legislature to be deviant, with a goal of promoting decency by prohibiting such conduct. *Id.* at 1202-03. Laws often represent moral choices,[3] and the fact that the morality reflected in the law is not shared by Mr. Paris does not render the law unconstitutional. See *Bowers*, 478 U.S. at 196. Mr. Paris and others who attack the existence of sodomy laws do not stand remediless in this situation; their remedy is, however, in the ballot box, not in the courts.

---

[3] Chapter 8, Title 18.2, of the Virginia Code reflects the codification of moral laws. Crimes involving morals and decency contained therein include the following prohibitions: gambling (Va. Code Ann. §§ 18.2-325 through 18.2-340); fornication (Va. Code Ann. § 18.2-344); prostitution (Va. Code Ann. §§ 18.2-346 *et seq.*); adultery (Va. Code Ann. § 18.2-365); child pornography (Va. Code Ann. § 18.2-374.1:1); indecent exposure (Va. Code Ann. § 18.2-387) (emphasis added and citation altered).